IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TRILLIUM PUMPS USA, INC., | § § § | |
| *Plaintiff,* | § § | SA-22-CV-00079-OLG |
| vs. | § § § | |
| FCCI INSURANCE COMPANY, | § § § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation and Order concerns the parties' cross-motions for summary judgment (Plaintiff's Motion for Summary Judgment [#20] and Defendant's Cross-Motion for Summary Judgment [#23]) and Plaintiff's Motion to Strike Defendant's Motion for Summary Judgement's Response [#24]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#28].

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds the jurisdictional threshold. The undersigned has authority to enter a recommendation on the parties' motions for summary judgment pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned has authority to enter this order on Plaintiff's motion to strike pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons set forth below, the undersigned will **deny** Plaintiff's motion to

1

strike and recommend that Plaintiff's motion for summary judgment be **denied** and Defendant's motion for summary judgment be **granted**.

## I.  Background

This breach-of-contract action arises out of the alleged failure of a surety to honor its bond payment obligations with respect to a public construction project.  Plaintiff Trillium Pumps USA, Inc. f/k/a Weir Floway, Inc. ("Trillium") is in the business of providing services, equipment, material, and labor to the construction industry and was the vendor for certain goods and services for a project known as the Weltner Road Pump Station.  Veritas Management Company, LLC d/b/a Black Castle General Contractor ("Black Castle") and New Braunfels Utilities entered into a public works contract to construct the project, which was bonded by Defendant FCCI Insurance Company ("FCCI").  Black Castle allegedly failed to pay for Trillium's invoiced goods and services, and Trillium made a claim against the bond furnished by FCCI.  FCCI refused to accept the claim as valid.

Trillium filed this action against FCCI in state court for breach of contract, asserting that it properly perfected its claim against the bond, and is entitled to payment in the amount of $87,962.48.  FCCI removed Trillium's Petition based on diversity jurisdiction.  Following removal, FCCI asserted a Counterclaim against Trillium seeking a declaration that Trillium's claim is invalid and unenforceable due to Trillium's failure to timely and properly perfect its bond claim.  The parties have now both moved for summary judgment.  The motions are ripe for review.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

### III.  Statutory Framework

The parties' dispute centers on whether Trillium satisfied the statutory requirements to perfect its claim against the bond at issue and provide timely and proper notice to FCCI of the claim. Texas law governs Trillium's claim for breach of contract and FCCI's request for a

declaratory judgment in this diversity action. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Chapter 2253 of the Texas Government Code, also known as the McGregor Act, governs the procedures required for bond claims in Texas. *In re Contractor Tech., Ltd.*, 529 F.3d 313, 316 (5th Cir. 2008). The McGregor Act "requires a prime contractor on a public-work contract to execute a payment bond to protect laborers and materialmen who work on or supply materials for the project." *Dealers Elec. Supply Co. v. Scroggins Const. Co.*, 292 S.W.3d 650, 652 (Tex. 2009) (citing Tex. Gov't Code § 2253.021(a)(2)). The statute "was enacted to protect public-work laborers and materialmen, since a lien cannot generally be asserted against a public improvement." *Id.* at 653.

Chapter 2253 has "stringent notice requirements" that must be followed for claimants supplying labor and materials for public-work projects "to give notice and perfect their claims under the Act." *Id.* However, the Texas Supreme Court has recognized that the act "is remedial in nature, and should be liberally construed to achieve its purposes." *Id.* The notice requirements at issue in this case are as follows:

> (a) A payment bond beneficiary must mail to the prime contractor and surety written notice of the claim.
>
> (b) The notice must be mailed on or before the 15th day of the third month after each month in which any of the claimed labor was performed or any of the claimed material was delivered.
>
> (c) The notice must be accompanied by a sworn statement of account that states in substance:
>
>> (1) The amount claimed is just and correct; and
>>
>> (2) All just and lawful offsets, payments, and credits known to the affiant have been allowed.

Tex. Gov't Code § 2253.041. Additionally, the Act requires that notice be mailed by certified or registered mail. *Id.* at § 2253.048(a). Further, a person satisfies the requirements relating to

providing notice to the surety if the person mails the notice by certified or registered mail to the surety at one or more of the following addresses:

> (1) at the address stated on the bond or on an attachment to the bond;
>
> (2) at the address on file with the Texas Department of Insurance; or
>
> (3) at any other address allowed by law.

*Id.* at § 2253.048(c).

FCCI asserts that Trillium failed to provide it with notice by the deadlines imposed by statute and failed to include the required sworn statement of account. Trillium claims that it substantially complied with the statutory requirements of the McGregor Act and provided actual notice to FCCI of the bond claim, entitling it to payment for the September Invoice. Having considered Texas courts' construction of the McGregor Act's notice requirements and the following summary judgment record, the undersigned finds that Trillium failed to provide notice as required by the Act, and therefore is not entitled to payment on the disputed bond claim.

## IV.  Summary Judgment Record

The following facts are undisputed, unless otherwise noted. On July 2, 2019, Black Castle, as Principal and General Contractor, entered into a public works contract with New Braunfels Utilities ("Owner") to construct a public works improvement project known as the Weltner Road Pump Station located in New Braunfels, Texas. (Rule 26 Report [#14], at 2.) In accordance with the contract, Black Castle and FCCI issued statutory payment bond No. 4402905 in the sum of $7,543,400 to Owner for the Project. (*Id.*; Payment Bond [#20-8], at 1–5.)

The bond was executed by Troy Russell Key as an attorney-in-fact for FCCI. (Pegoraro Aff. [#23-1], at ¶ 4; Payment Bond [#20-8], at 2.) Mr. Key is a member of an independent surety

bond and insurance agency, Mullis Newby Hurst LP ("MNH"). (Pegoraro Aff. [#23-1], at ¶ 4.) Sandra Lee Roney also works at MNH and was appointed (along with Mr. Key) as FCCI's attorney-in-fact pursuant to a General Power of Attorney attached to the bond. (Payment Bond [#20-8], at 3.) The Power of Attorney indicates that Ms. Roney and the other attorneys-in-fact were appointed "to make, execute, seal and deliver, for and on [FCCI's] behalf as surety, and as its act and deed in all bonds and undertakings. . . ." (Pegoraro Aff. [#23-1], at ¶ 4; Payment Bond [#20-8], at 3.)

Black Castle entered into a Purchase Order with Trillium, dated July 21, 2020, for certain materials and/or services for the project (namely booster pumps and related materials) for the price of $353,267.00. (Rule 26 Report [#14], at 2.) Trillium supplied certain materials to Black Castle under the Purchase Order, and several invoices were generated. (Invoices [#20-3], at 4.) The Invoice No. 110787 ("the September Invoice") covered materials provided in September 2020 and totaled $87,962.48; Invoice 110927 ("the October Invoice") covered materials provided in October 2020 and totaled $170,993.82. (*Id.* at 4, 8–9.)

Black Castle failed to pay Trillium for the September and October Invoices. Trillium retained an outside lien and bond claim firm, NCS Construction Services Group ("NCS"), which mailed a "Preliminary Notice" of claim on Trillium's behalf on December 15, 2020, for the unpaid amounts due under the September and October Invoices ("December Notice"). (December Notice [#20-3], at 11–13.) The December Notice was addressed to Ms. Roney as "Surety" and sent to 50517 Keller Springs Road, Suite 400, Addison, Texas 75001. (*Id.* at 10.) The correct address for Ms. Roney is 5057, not 50517, Keller Springs Road. (Correspondence [#20-11], at 1.) The parties agree the December Notice did not include a signed sworn statement of account. (Rule 26 Report [#14], at 2.)

Trillium mailed a second notice for the unpaid September and October Invoices on January 14, 2021 ("January Notice"), which included a copy of the December Notice. (January Notice [#20-3], at 1–38.) The January Notice was addressed to FCCI, not Ms. Roney, at its address listed on the bond and with the Department of Insurance, and included a signed sworn statement of account. (*Id.* at 3.) FCCI contends that it first received a copy of the Notices on January 15, 2021, via email when Ms. Roney forwarded them to Erveis Cortez in FCCI's underwriting department. (Pegoraro Aff. [#23-1], at ¶ 5; Correspondence [#23-4], at 1–2.) (Apparently, the January Notice was sent to Ms. Roney via email.) Mr. Cortez immediately forwarded the email to Susie Pegoraro, Senior Surety Claim Adjuster at FCCI. (Pegoraro Aff. [#23-1], at ¶ 5; Correspondence [#23-4], at 1–2.) Ms. Pegoraro asserts that before January 15, 2021, neither FCCI corporately nor she individually had any actual notice or knowledge of the December notice. (Pegoraro Aff. [#23-1], at ¶ 5.)

FCCI agreed to pay the October Invoice, based on the parties' agreement that the January Notice perfected Trillium's claim for payment as to goods and services provided in October 2020. (Settlement [#20-4], at 1–3.) However, on March 10, 2021, FCCI send Trillium a written denial letter regarding the September Invoice, asserting the invalidity of the December Notice based on untimeliness and the failure to include a sworn statement of account. (Pegoraro Aff. [#23-1], at ¶ 7; Denial [#23-5], at 1–4.) The September Invoice remains unpaid.

## V. Analysis

The parties' cross-motions for summary judgment ask the Court to determine whether Trillium perfected its claim against the bond with respect to the outstanding September Invoice. For the reasons that follow, the Court should deny Trillium's motion for summary judgment and hold that Trillium's deviations from the statutory notice requirements of the McGregor Act

rendered the attempted notice defective, such that Trillium did not substantially comply with the statute and is therefore not entitled to payment on the claim. Based on this holding, the Court should grant FCCI's motion for summary judgment and issue the requested declaratory judgment by FCCI regarding the invalidity of the bond claim at issue. However, the Court should not grant FCCI's motion as to its request for attorney's fees; instead, FCCI should be ordered to file a separate motion for reasonable fees pursuant to this Court's Local Rules. Finally, the Court will grant in part Trillium's motion to strike FCCI's summary judgment evidence.

**A.     The Court will grant in part Trillium's motion to strike Ms. Pegoraro's affidavit.**

Trillium asks the Court to strike various portions of Ms. Pegoraro's affidavit as inadmissible for violating the parole evidence rule and containing improper legal conclusions. The Court will grant the motion in part.

Trillium argues that Ms. Pegoraro's affidavit contains improper legal conclusions as to the untimeliness of the December Notice. The Court disagrees. Ms. Pegoraro's testimony is not offered as a legal conclusion but as a factual reason for her denial of Trillium's claim on behalf of FCCI. The undersigned has not relied upon her assertions regarding timeliness as a legal conclusion; the undersigned has formed independent legal conclusions as to Trillium's compliance with the statute, and the analysis supporting these conclusions is explained in this Report and Recommendation.

As to the parole evidence rule, Trillium argues that Ms. Pegoraro impermissibly offers her own interpretation as to the Power of Attorney attached to the bond (because it constitutes inadmissible extrinsic evidence of the meaning of a contract), when the contract is not ambiguous. The Court agrees with Trillium that there is no ambiguity requiring extrinsic evidence to interpret the Power of Attorney, and the Court has not considered Ms. Pegoraro's

8

statements as to the meaning of the contract in construing the same. The Court will therefore grant in part Trillium's motion and strike Ms. Pegoraro's statements regarding her interpretation of the Power of Attorney.

**B.      The Court should deny Trillium's motion for summary judgment.**

Based on the facts in the summary judgment record, it is undisputed that the December Notice did not strictly comply with the statutory notice requirements of the McGregor Act for perfecting a claim against a bond. Trillium failed to include a sworn statement of account in the December Notice as required by Tex. Gov't Code § 2253.041(c). And Trillium did not mail notice to FCCI on or before December 15 for payment on the September Invoice; rather, Trillium mailed notice to Ms. Roney at an incorrect address. It is undisputed that FCCI did not receive actual notice of the bond claim on the September Invoice until Trillium sent notice to FCCI as its correct address on January 14, 2021, and Ms. Roney forwarded the electronic version of the notice to FCCI the following day.

The Texas Supreme Court has not addressed the precise issues presented in this case as to how strictly the Court should construe the McGregor Act's notice requirements and the particular deficiencies with respect to the December Notice outlined above. Accordingly, this Court "must make an 'Erie guess' and 'determine as best it can'" what the Texas Supreme Court would decide on the facts of this case. *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) (quoting *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir. 1999)); *see also Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271–72 (5th Cir. 2000). In this analysis, decisions from Texas's intermediate courts of appeals provide persuasive, but not binding, authority for this Court to consider. *Howe*, 204 F.3d at 627.

Having reviewed the treatment of the McGregor Act by various Texas courts of appeals, the undersigned finds that the Texas Supreme Court would likely conclude that Trillium's deviations from the Act's requirements are significant and render the notice invalid. The Court should reject Trillium's argument that it substantially complied with the McGregor's Act's notice requirements such that its errors should be excused.

In advocating for its position that its claim against the bond is valid, Trillium emphasizes the fact that numerous courts of appeals have recognized, with respect to bond claims, that "substantial compliance is all that is required." *See, e.g.*, *Capitol Indem. Corp. v. Kirby Rest. Equip & Chem. Supply Co.*, 170 S.W.3d 144, 148 (Tex. App.—San Antonio 2005, pet denied). In describing "substantial compliance," these courts have explained that the McGregor Act "was not intended to set up technical tricks, traps, and stumbling blocks to the filing of legitimate notices of claims, but to provide a simple and direct method of giving notice and perfecting claims." *United Fire & Cas. Co. v. Boring & Tunneling Co. of Am.*, 321 S.W.3d 24, 27 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (internal quotation and citation omitted). Under governing Texas law, substantial compliance has occurred "when an actor's deviation does not seriously impede the legislative purpose of the statute." *Id.* at 28.

Although Trillium directs the Court to many cases regarding substantial compliance with the Act's requirements, none of these cases involved facts similar to the situation here—(1) notice sent to the wrong person; (2) notice sent without a required sworn statement of account; and (3) actual notice not received by the surety until one month after the statutory deadline. The case law interpreting the McGregor Act is voluminous, and the undersigned is not attempting to reconcile all intermediate Texas court of appeals cases in evaluating the legal issue before the Court. However, a survey of the case law reveals important guiding principles.

First, Texas case law makes clear that the doctrine of substantial compliance is primarily applied to excuse technical deviations from the *content* of notice or the *content* of the required sworn statement, not to excuse the failure to provide notice or the statement altogether. For example, a bond claimant substantially complied with the McGregor Act's statutory notice requirements where the only error on the notice was the placement of an affiant's signature in the wrong place on the mandatory sworn statement of account. *Acme Brick, a Div. of Justin Indus., Inc. v. Temple Assoc., Inc.*, 816 S.W.2d 440, 441 (Tex. App.—Waco 1991, writ denied). Similarly, a bond claimant substantially complied with the statute where the only error in notice was a deficiency in the specific required language in the sworn statement of account. *Capitol Indem. Corp.*, 170 S.W.3d at 147–48; *Featherlite Bldg. Prods. Corp. v. Constructors Unlimited, Inc.*, 714 S.W.2d 68, 70 (Tex. App.—Houston [14th Dist.] 1986, writ refused n.r.e.). Finally, courts have excused clerical errors, such as the failure of the notary to attach her signature and seal before mailing the notice. *United Fire & Cas. Co. v. Boring & Tunneling Co. of Am.*, 321 S.W.3d 24, 29 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

Additionally, where the errors with respect to notice concern more substantive deficiencies, such as the failure to mail the notice in the correct manner or to the correct person or to include a sworn statement of account altogether, a finding of substantial compliance appears to hinge on whether the surety received "actual, timely, adequate notice" of the claim against the bond, despite these issues. *See Redland Ins. Co. v. Sw. Stainless, L.P.*, 181 S.W.3d 509, 512–13 (Tex. App.—Fort Worth 2005, no pet.) For example, mailing notice by first-class regular mail, rather than certified mail, constituted substantial compliance with the statute, where evidence showed that notice was actually received by the surety. *Id.* Similarly, in the primary case cited by Trillium in support of excusing its failure to include a sworn statement of account

in the December Notice, the Austin Court of Appeals found substantial compliance despite the lack of a sworn statement of account and the failure to serve the prime contractor with notice, in light of the fact that the surety received timely actual notice of the bond claim. *Star Operations, Inc. v. Dig Tech, Inc.*, No. 03-15-00423-CV, 2017 WL 3263352, at *11–12 (Tex. App.—Austin July 27, 2017, pet. denied).[1]

The court in *Star Operations* itself recognized that notification deadlines governing the timeliness of actual notice are mandatory. *Id.* at *11 ("Consequently, while courts typically find that parties must strictly comply with notification deadlines, only substantial compliance is required for other notice provisions."). For this reason, Texas courts have rejected arguments from bond claimants that they substantially complied with the statutory requirements of the McGregor Act where they failed to mail notice to the surety until after the deadline to do so. *See, e.g.*, *Lab. Design & Equip., Inc. v. Brooks Dev. Auth.*, No. 04–07–00284–CV, 2008 WL 36614, at *3 (Tex. App.—San Antonio, no pet.) (holding that notice mailed one year late (along with the failure to provide a sworn statement) prevented subcontractor from recovering against bond). In construing a related lien statute, which is also liberally construed to protect bond claimants, Texas courts have concluded the same. *See, e.g.*, *Tex. Constr. Assocs. v. Balli*, 558 S.W.2d 513, 518–19 (Tex. App.—Corpus Christi 1977, no writ) (failure to provide timely written notice was not saved by fact that owner had actual notice of debt).

Moreover, the Fifth Circuit, in construing the McGregor Act, has interpreted the Act as mandating strict adherence to the timing deadlines for notice. *See In re Contractor Tech.*, 529

---

[1] The undersigned notes that the entire analysis in this case regarding the McGregor Act was dictum, as the court also held that the Miller Act, not the McGregor Act, governed the claim against the bond at issue. *Star Operations*, 2017 WL 3263352, at *10. This case is also the *only* case identified by Trillium (or discovered by the undersigned in her research), in which notice was deemed substantially compliant despite a failure to include a sworn statement of account. Accordingly, the precedential value of this case is limited.

F.3d at 320. The Fifth Circuit's 2008 decision addressed whether a bond claimant who sent notice within three days after the date of repayment established by the bankruptcy court and approximately 17 months after its delivery of material being invoiced nonetheless substantially complied with the McGregor Act's notice requirements. *Id.* at 320. The court held that it did not, because "timing requirements are different." *Id.* "Liberal construction" of the McGregor Act's notice requirements "cannot read the timing requirements out of the statute," which the court referred to as a "substantive condition precedent to the existence of a cause of action on the surety bond." *Id.* at 320–21 (internal quotation and citation omitted). *See also Blue Ribbon Staffing LLC v. Flatiron Constructors, Inc.*, 5-20-cv-00686-RBF, 2021 WL 256824, at *7–8 (W.D. Tex. Jan. 26, 2021) (strictly construing notice deadlines and dismissing claim on payment bond as a matter of law where claimant failed to allege that it had timely mailed the claim at issue to the surety).

In this case, there was no actual, timely, adequate notice provided to FCCI of Trillium's claim against the bond for the unpaid September Invoice. Trillium has not supplied the Court with any evidence that FCCI had actual notice of the claim until one month after the deadline for mailing notice under the statute. To find substantial compliance on these facts, the Court would have to hold that Trillium's attempt to mail notice of the September Invoice to FCCI on December 15, 2020, complied with the timing requirements of the statute. Embracing this holding would undermine the fundamental aspects of the notice requirement—both as to who is entitled to notice and when they are entitled to it. Trillium mailed notice to Ms. Roney, an individual who was appointed as an attorney-in-fact for the sole and express purpose of issuing bonds for FCCI, at an incorrect address for the independent surety bond and insurance agency for which she worked. Trillium did not mail notice to any of the three addresses identified in the

statute for mailing notice to the surety, namely the sole address for FCCI identified on the bond and listed with the Texas Department of Insurance.  *See* Tex. Gov't Code § 2253.048(c).

Trillium attempts to argue that the language in the power of attorney granted Ms. Roney the authority to receive claims against the issued bond, but the undersigned does not find textual support for this reading.  The operative clause in the Power of Attorney states "to make, execute, seal and deliver, for and on its behalf as surety, and as its act and deed in all bonds and undertakings." (Payment Bond [#20-8], at 3.)  Trillium attempts to remove the preposition "as" and the possessive pronoun "its" and insert the word "to" so that the phrase reads "to act and deed in all bonds and undertakings."  This is not the language used in the Power of Attorney, and even if it were, the Court is not convinced this language would even convey that Ms. Roney is appointed to receive the statutorily required notice in place of FCCI (the surety).  Nor has Trillium submitted any other evidence or case law to the Court supporting this interpretation.  The power of attorney only granted Ms. Roney the right "to make, execute seal and deliver" bonds, undertakings or other contracts of suretyship for FCCI.

In summary, as Texas courts have recognized, "'substantial compliance' is not a license to ignore statutory requirements."  *Wesco Distribution, Inc. v. Westport Grp., Inc.*, 150 S.W.3d 553, 559 (Tex. App.—Austin 2004, no pet.).  "The notice requirement, unlike the technical defects excused by substantial compliance, plays a critical role in achieving the purposes of this statute." *Id.*  The purposes of the notice requirements in the statute are "(1) to give those parties entitled to notice an opportunity to protect their interests, and (2) to prevent surprise."  *Id.* "Substantial compliance has been defined as satisfaction of the 'essential requirements of a statute' and occurs when an actor's deviation does not seriously impede the legislative purpose of the statutory requirements.'"  *Star Operations*, 2017 WL 3263352, at *11 (quoting *Stratton v.*

14

*Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 30 (Tex. App.—Austin 1999, no pet.)). Embracing Trillium's theory of substantial compliance in this case would do "violence to the terms of the . . . statute by reading the notice provision completely out of the statute." *Wesco Distribution*, 150 S.W.3d at 560.

In light of the foregoing, the undersigned concludes that the Texas Supreme Court would hold that Trillium did not substantially comply with the McGregor Act's notice requirements when it sent notice to the wrong person, at an incorrect address, without a sworn statement of account, and in light of the fact that FCCI did not receive actual notice of the claim on the September Invoice until one month after the mailing deadline. Because Trillium did not substantially comply with the McGregor Act's requirements, which are a precondition to its suit, Trillium cannot prevail on its cause of action to enforce its claim against the payment bond, and the Court should deny Trillium's motion for summary judgment.

**C.     The Court should grant in part FCCI's motion for summary judgment.**

The Court should, however, grant in part FCCI's motion for summary judgment. FCCI's motion asks the Court for a declaratory judgment that (1) Trillium failed to prove a substantive condition precedent to any liability under the bond; (2) Trillium's claim under the bond is invalid; and (3) Trillium shall take nothing against FCCI in this suit. The Court should grant FCCI this requested relief.

FCCI also requests an award of reasonable attorney's fees and costs. The McGregor Act provides that "a court may award costs and reasonable attorney fees that are equitable in a proceeding to enforce a claim on a payment bond or to declarant that any part of a claim is invalid." Tex. Gov't Code § 2253.074. Any such award is not mandatory as a matter of right, but rather within the trial court's discretion. *S.A. Maxwell Co. v. R.C. Small & Assocs., Inc.*, 873

15

S.W.2d 447, 456 (Tex. App.—Dallas 1994, writ denied). Pursuant to Local Rule CV-54, any claim by FCCI for attorney's fees should be made by motion no later than 14 days after entry of judgment pursuant to Federal Rule of Civil Procedure 54. W.D. Tex. Loc. R. CV-54(b)(1). FCCI should follow the procedures in Local Rule 54. Accordingly, this portion of FCCI's motion for summary judgment should be denied without prejudice to refiling a proper motion under this Court's Local Rules.

## VI.  Conclusion and Recommendation

Having considered the parties' motions, the responses and replies thereto, the summary judgment record before the Court, and the governing law,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike Defendant's Motion for Summary Judgement's Response [#24] is **GRANTED IN PART**.

**IT IS ALSO HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment [#20] be **DENIED** and Defendant's Cross-Motion for Summary Judgment [#23] be **GRANTED IN PART** as set forth herein.

## VII.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections are limited to no more than 20 pages unless leave of court is granted. The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing

objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

    SIGNED this 16th day of February, 2023.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE